|2FOIL, Judge.
We granted supervisory writs in this case to review a decision of the Louisiana Commission on Ethics for Public Employees which held that a proposed contract with a state agency was prohibited by the Ethics Code. After a thorough review of the record, we vacate that ruling.
FACTUAL AND PROCEDURAL BACKGROUND
Charles Fulda, III, relator, sought the opinion of the Commission on Ethics for Public Employees (Commission) regarding the legality of a contract he was offered by the State of Louisiana, Office of Public Health (OPH) to run a research program. The factual background forming the basis for this litigation is not in dispute. Mr. Fulda, who had many years of experience working in various computer related fields, was employed by the Jefferson Project from August 17, 1994 until December 22, 1994 as a computer specialist. The Jefferson Project was retained as a contractor by OPH to run the Emergency Public Health Information Surveillance System (EPHISS). The EPHISS project, which is a computerized data system *1383 utilized to obtain information from hospital emergency rooms throughout the State of Louisiana, is funded through the federal government and is run by OPH and the Center of Disease Control in Atlanta, Georgia. The project encourages hospitals to join the program, and once on board, the hospitals are provided with computer equipment and training. The information collected by virtue of the EPHISS system is utilized for surveillance of injuries and illnesses. Some of the goals of the EPHISS program are to increase knowledge of disaster related injuries and illnesses and target populations for possible interventions.
While working for the Jefferson Group on the EPHISS project, Mr. Fulda was responsible for presenting the EPHISS program to hospitals. Once a hospital agreed to join the program, Mr. Fulda installed the computer equipment and connected the software to run with the hospital’s main computers. He was also responsible for training hospital personnel, recommending hardware and software, repairing the software and assessing the data downloading process.
|3On December 22, 1994, Jefferson’s contract with OPH ended. To keep the EPH-ISS project operational until another contractor could be retained, OPH offered Mr. Fulda two temporary restricted appointment contracts. The provisional appointments were effective from December 23, 1994 until June 22, 1995. Pursuant to the two restrictive appointments, Mr. Fulda continued to run the EPHISS project.
Prior to the end of the second restricted appointment, OPH offered Mr. Fulda a contract to run the EPHISS project. During negotiations on the contract, the issue was raised regarding potential Ethics Code violations. Mr. Fulda filed a formal request with the Commission on June 27,1995, asking that the Commission issue an advisory opinion on the legality of the proposed contract.[1] By letter dated July 25, 1995, Mr. Fulda was informed that the Commission concluded that Section 42:1121 B of the Ethics Code prohibited him from entering into the contract. Specifically, the Commission ruled that Mr. Fulda was a “public employee” for the purposes of the Ethics Code at the time he worked for OPH on the two temporary multi-restricted appointments. The Commission then concluded that Mr. Fulda was prohibited from entering into the contract by virtue of La.R.S. 42:1121 B because the proposed contract would require him to perform for OPH, on a contractual basis, the same services he performed while employed by OPH pursuant to the temporary assignments.
Mr. Fulda applied for supervisory writs to this court, and we granted his request to review the correctness of the Commission’s ruling which effectively barred Mr. Fulda from entering into a contract with OPH to run the EPHISS Project.
SUPERVISORY REVIEW OF ADVISORY OPINION
OPH contends that this court does not have jurisdiction to review an advisory opinion issued by the Commission. It posits that Mr. Fulda’s application is premature and that there is no factual case or controversy for this court to review. However, the Commission’s identical challenge to judicial review of its advisory opinions has been consistently rejected by this court. La.R.S. 42:1142 expressly vests this court with supervisory jurisdiction over preliminary, procedural or intermediate actions or rulings of the Ethics Commission. The law is settled that an advisory opinion rendered by the Commission is a preliminary or intermediate action or ruling by the ethics body within the meaning of La.R.S. 42:1142, and as such, it is subject to this court’s supervisory jurisdiction. Louisiana Insurance Guaranty Association v. Commission on Ethics for Public Employees, 95-0021 (La.App. 1st Cir. 5/5/95); *1384 656 So.2d 670, writ denied, 95-1833 (La. 11/13/95); 662 So.2d 467; City of Baton Rouge v. Commission on Ethics for Public Employees, 94-2480 (La.App. 1st Cir. 5/5/95); 655 So.2d 457, 459, writ denied, 95-1423 (La. 9/22/95); 660 So.2d473; Board of Trustees of Employees’ Retirement System of City of Baton Rouge v. Commission on Ethics for Public Employees, 95-0062 (La.App. 1st Cir. 5/5/95); 655 So.2d 1355, 1356, writ denied, 95-1417 (La. 9/22/95); 660 So.2d 472. See also In re Regions Banks of Louisiana and C.C. Dabadie, 95-0061 (La.App. 1st Cir. 12/15/95); 665 So.2d 824, (wherein this court, without discussion, reviewed an advisory opinion of the Ethics Commission). Accordingly, the challenged advisory opinion issued by the Ethics Commission is properly before this court for supervisory review.
LEGALITY OF THE PROPOSED CONTRACT
The Commission found that the proposed Fulda-OPH contract violated the section of the Code of Governmental Ethics which sets forth rules regulating the conduct of public servants following the termination of the public service. La.R.S. 42:1121 B, the provision relied on by the Commission, states as follows:
B. General rule for other public employees. No former public employee shall, for a period of two years following the termination of his public employment, assist another person, for compensation, in a transaction, or in an appearance in connection with a transaction in which such former public employee participated at any time during his public employment and involving the governmental entity by which he was formerly employed, or for a period of two years following termination of his public employment, render, on a |5contractual basis to or for the agency with which he was formerly employed, any service which such former public employee had rendered to the agency during the term of his public employment.
The Commission also relies on the broad definition of the term “public employee” found in the ethics law. The term “public employee” under La.R.S. 42:1102(18)(e) and (d) encompasses those engaged in the performance of a governmental function, as well as those under the supervision of an elected official or another employee of a governmental entity.
It is the Commission’s position that the term “public employee” is broad enough to include Mr. Fulda’s temporary restrictive appointments within its scope. The Commission contends that Mr. Fulda’s restrictive appointments fell under the literal language of La.R.S. 42:1121 so as to preclude him from “contracting back” with OPH to perform the same services he did while he was employed by OPH pursuant to the temporary emergency appointments. The Commission does not point to any real or potential conflict of interest that may result from allowing Mr. Fulda to enter into the contract with OPH, and readily admits that it did not take such information into account in rendering its decision. Instead, the Commission posits that it must apply the Code of Ethics objectively and equally to all situations, and it does not have the liberty to decide whether the Code should apply to Mr. Fulda because of the unusual circumstances of this case. In short, the Commission contends that because the law clearly and unambiguously applies to Mr. Fulda’s situation, this court is barred from determining whether the legislature could have contemplated such a result in enacting the post-employment contract ban, and this court therefore may not look any further than the letter of the law in determining whether the contract at issue is prohibited by the Ethics Code.
However, on numerous occasions, our courts have cautioned against such an expansive approach by the Commission. Contrary to the Commission’s assertions, in resolving disputes regarding the applicability of the provisions of the Code of Ethics, our courts | rbave routinely looked to the purposes behind the Code to determine whether those purposes would be served by the application of the Code to a given situation. See Hill v. Commission on Ethics for Public Employ *1385 ees, 453 So.2d 558 (La.1984); In re Regions Banks of Louisiana and C.C. Dabadie, 95-0061, p. 5; 665 So.2d at 826-27; Macmurdo v. Commission on Ethics for Public Employees, 486 So.2d 829 (La.App. 1st Cir.), writ denied, 488 So.2d 188 (La.1986); Board of Commissioners, Fifth Louisiana Levee District and Michael O. Hesse v. Commission on Ethics for Public Employees, 484 So.2d 845 (La.App. 1st Cir.), writ denied, 487 So.2d 440 (La.1986).
In In re Beychok, 495 So.2d 1278, 1281 (La.1986), the Louisiana Supreme Court explained the primary purpose of the Code of Ethics in this way:
... R.S. 42:1101B states that the primary purpose of the code is to assure that decisions are made in an impartial manner free from the influence of private gain. In order to accomplish this goal, the Declaration of Policy found in R.S. 42:1101B emphasizes the need to enact ethical standards protecting against conflicts of interest which may give rise to the appearance of impropriety. A conflict of interest arises when an official is torn between serving two masters: his private interest and the public’s. Since a conflict of interest increases the danger of wrongdoing, the code’s primary objective is to prevent their occurrence.
The primary objective of the code is to prevent not only the actuality of conflicts of interest, but also to prevent the occurrence of those situations that tend to create a perception of conflict of interest. It does this by delineating situations that present too great a danger of conflict of interest occurring.
(Citations omitted)
La.R.S. 42:1121 B was enacted to prevent a “revolving door” of successive government and private employments. In re Regions Banks of Louisiana and C.C. Dabadie, 95-0061 p. 5; 665 So.2d at 826-27. This court explained why the legislature enacted the post-employment ban in Board of Commissioners, Fifth Louisiana Levee District and Michael O. Hesse v. Commission on Ethics for Public Employees, 484 So.2d 845 at 850, as follows:
The reasoning behind the prohibition as provided for in the statute is apparent. Public employees should not be able to use their positions of employment to seek or gain a contract with their employer to render the same services for their employer at a higher price or with a better arrangement. In that situation, a real conflict of interest exists.
(Emphasis in original)
|7In the Hesse case, 484 So.2d 845, this court found that the Commission erred in giving an expansive interpretation to the Ethics Code beyond its literal language to cover an arrangement with only a remote possibility of a conflict of interest. In so doing, this court relied on the case of Hill v. Commission on Ethics for Public Employees, 453 So.2d at 563, wherein the Supreme Court rejected the Commission’s determination that a specific provision of the Ethics Code prohibited an individual who owned a beauty salon from serving on the State Cosmetology Board. The Commission found only a remote possibility of a conflict of interest which it could not pinpoint or document. The Court concluded that the findings of the Commission were not sufficient to support a finding of an Ethics Code violation.
Recently, in In re Regions Banks of Louisiana and C.C. Dabadie, 95-0061, p. 5-6; 665 So.2d at 826-27, this court rejected the Commission’s attempt to find a violation of the Ethics Code on the mere presumption of an occurrence which could give rise to a conflict of interest. This court ruled that based on the Hill case, the Commission’s presumptive approach was unwarranted and incorrect.
Similarly, we conclude that the Commission erred in applying the literal language of La.R.S. 42:1121 to Mr. Fulda’s arrangement with OPH without regard to the unusual circumstances of his case and the complete absence of a conflict of interest in allowing Mr. Fulda to contract with the OPH to run *1386 the EPHISS project. In fact, the Commission cannot postulate a conflict of interest under the circumstances of this case. It has not suggested that the Fulda-OPH contract arrangement presents even a remote possibility of a conflict of interest situation. This is so because, simply put, no conflict of interest is present in this case. Mr. Fulda came into the EPHISS project as an employee of OPH’s contractor, the Jefferson Group. The provisional appointment of Mr. Fulda to the EPHISS project was done by OPH due to the exigencies of that situation, and was only a limited, temporary arrangement. Mr. Ful-da did not voluntarily leave public employment in an attempt to |8return to work for OPH on the EPHISS project on a contractual basis under a better arrangement. Rather, he was involved in running the EPHISS project prior to the temporary appointments, and it was contemplated that he would continue running the project as soon as a contract to run the program could be finalized. The provisional appointments were merely done to keep the EPHISS program operational, which by its very nature, required the ongoing involvement of Mr. Fulda.
Due to the unique circumstances of this case, we find that the temporary appointments do not bar Mr. Fulda from entering into a contract with OPH to run the EPHISS program. We conclude that the legislature did not intend, by enacting La.R.S. 42:1121, to preclude an individual such as Mr. Fulda, who worked briefly for a state agency on an extremely limited basis due to an emergency situation, from entering into a contract to provide services to that state agency. Therefore, we vacate the Commission’s ruling declaring the Fulda-OPH contract viola-tive of the Ethics Code.[2]
BACK PAY AND ATTORNEY’S FEES
Mr. Fulda urges that he is entitled to lost compensation and attorney’s fees under La.R.S. 42:1142 B, which states:
In the event that any public employee suspended or dismissed by order of the commission, or any public employee suspended or dismissed by an appointing authority at order of the commission expressly for violation of this Chapter is ordered reinstated by court order upon appeal, the public employee shall be entitled to receive his back pay for the period of his suspension or improper dismissal less any earnings by him during the period from other sources, provided, however, that there shall be excluded from the mentioned deduction costs of court and reasonable attorney fees which shall be fixed by the court.
However, by its express terms, this provision does not apply to Mr. Fulda because he was not suspended or dismissed by an order of the Commission. Mr. Fulda sought an advisory opinion from the Commission concerning the legality of the proposed contract with laOPH. Therefore, he is not entitled to back wages or attorney’s fees under La.R.S. 42:1142 B.
DECREE
For the above reasons, we exercise our supervisory jurisdiction, grant the writ application and vacate and set aside the Commission’s ruling. Costs in the amount of $204.00 are assessed against the Commission.
WRIT GRANTED; ORDER VACATED.

. Mr. Fulda also brought a lawsuit against the OPH and the Commission in the 19th Judicial District Court for the Parish of East Baton Rouge. According to Mr. Fulda's brief, a hearing on his request for a Preliminary Injunction was stayed by that court pending the decision of this court.

. Because of our determination that the Commission’s ruling is improper, we need not address Mr. Fulda's constitutional challenge to the validity of that ruling.